The Honorable Brian D. Lynch
Chapter 13
Hearing Location: Telephonic
Hearing Date: December 16, 2020
Hearing Time: 01:30 P.M.
Response Date: December 02, 2020

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON - TACOMA DIVISION

| | |
|---|---|
| In Re:<br><br>Jacarae Lea Fairbanks,<br><br>    Debtor. | Case No.: 20-42304-BDL<br><br>CHAPTER 13<br><br>**MOTION FOR RETROACTIVE ANNULMENT OF THE AUTOMATIC STAY AND VALIDATION OF EXECUTION, DELIVERY AND RECORDING OF TRUSTEE'S DEED** |

    Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C ("Wilmington"), its successors and/or assignees (collectively referred to as "Movant") moves the Court pursuant to 11 USC §362(d)(1) for an Order for Retroactive Annulment of the Automatic Stay and Validation of the Execution, Delivery and Recording of the Trustee's Deed Upon Sale.

    **I.    RELEVANT FACTS**

    **A. The Property**

    On or about November 29, 2006, Jacarae Lea Fairbanks executed a note in favor of Capital Six Funding, an Operating Series of Mandalay Mortgage LLC., A Delaware Limited Liability Company in the original principal amount of $220,000.00 ("Note"). The debt

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 1

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 1 of 9

described by the Note was secured by a deed of trust ("Deed of Trust") properly recorded and creating a lien against property commonly described as 18610 85th Avenue East, Puyallup, Washington 98375 (the "Property").

The debtor fell behind on her payments and was due for the October 1, 2015 payment. In February of 2017, Debtor obtain a Loan Modification which lowered the interest rate and changed her principal and interest payment. A **new first payment due date was set for April 1, 2017**. She made three payments and then defaulted.

### B. The Foreclosure Efforts

On or about March 25, 2019, a Notice of Trustee's Sale was recorded as Auditors #201903250255. On September 26, 2019, the Debtor executed a Loan Modification Agreement with Trial Payment Plan Provision. The agreement included 12 trial plan payments of $2,139.05. In its terms, the Debtor agreed: "Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to place the foreclosure on hold. Consumer understands, as a condition of entering into this Loan Modification, that there will be a Twelve (12) consecutive month trial period, beginning 9/1/19 and ending 8/1/20. **During this Trial Payment Plan the Consumer understands that the loan will remain in foreclosure. If Consumer fails to make a monthly payment or exceeds a delinquency of Thirty (30) days or more, Consumer agrees to stipulate to Foreclosure and waives their right to all defenses upon default of the New Loan Modification Agreement**."

The Debtor failed to make the February 2020, March 2020, and April 2020 trial plan payments. As a result of Debtor's default on the trial plan payments, Movant proceeded with the foreclosure. On May 21, 2020, the State of Washington Department of Commerce issued a Referral for Foreclosure Mediation Notice pursuant to RCW 61.24.163(3). Movant participated fully and on July 15, 2020, issued a denial letter based upon insufficient income.

On or about August 5, 2020, the assigned Mediator issued a certificate finding bad faith on part of the Debtor for failing to supply all statutory required documents after an extension of time was granted to the Debtor to provide such documents.

\\\

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 2

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 2 of 9

On October 2, 2020, the foreclosure sale went forward. The Property was sold to a bona-fide third party purchaser, Ladder Properties LLC and Eastside Funding LLC for Security Purposes Only for $353,100.00. There are surplus funds from the sale.

As set forth in the Declaration of Michelle Ghidotti, Movant's Foreclosure Trustee, filed concurrently herewith, general notice of this bankruptcy petition was provided by Debtor's Counsel on October 9, 2020. The notice failed to mention the sale date or status. Out of the state and away from the office, Ms. Ghidotti acknowledged receipt of the notice. Then, upon her return to the office on October 12, 2020, Ms. Ghidotti executed the already prepared Trustee's Deed Upon Sale ("TDUS") waiting on her desk without realizing that it related to the October 9th email sent by Debtor's Counsel. The third party purchaser subsequently recorded the TDUS on October 15, 2020 as Auditors #202010150413.

## II. ARGUMENT AND AUTHORITY

### A. Standing

Any "party in interest" may seek relief from stay. 11 U.S.C. § 362(d). A "party in interest" may include "any party that has a pecuniary interest in the matter, that has a practical stake in the resolution of the matter or that is impacted by the automatic stay." *In re Cruz*, 516 B.R. 594, 602 (9th Cir. BAP 2014) (citing *Brown v. Sobczak (In re Sobczak)*, 369 B.R. 512, 517–18 (9th Cir. BAP 2007)).

### B. The Sale Occurred Pre-Petition And The Trustee Deed Upon Sale Was Recorded Within 15 Days From The Sale Date.

Under the Washington Deed of Trust Act, a nonjudicial sale is final if a bid is accepted and the trustee's deed is properly recorded. The Deed of Trust Act provides:

> When delivered to the purchaser, the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. **If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter. (Emphasis added.)**

The Washington Supreme Court has considered the impact of a foreclosure sale and a recorded Deed. *See Udall v. T.D. Escrow Svcs., Inc.,* 159 Wn. 2d. 903, 908, 154 P.3d. 882.

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 3

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 3 of 9

(2007). The Court held that the foreclosure trustee's acceptance of the fall of the gavel bound the foreclosure trustee to the delivery subject only to procedural irregularities in the sale.

The recording of the TDUS falls under the "ministerial act" exception to automatic stay. Ministerial acts are automatic occurrences that entail no deliberation, discretion, or judicial involvement. *In re Pettit*, 217 F.3d 1072, 1080 (9th Cir. 2000)(ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute violation of the stay). Arguably the execution and delivery of the TDUS after the foreclosure sale are also ministerial acts that do not require any deliberation or discretion and as such are not a violation of the stay. However, if the Court believes the execution and delivery of the TDUS by the Trustee is not a ministerial act, good cause exists for retroactive annulment of the automatic stay.

### C. Pursuant To 11 U.S.C. § 362(d)(1) Cause Exists for Annulment of the Automatic Stay.

Pursuant to Section 362(d)(1), Movant is entitled to relief from stay "for cause", including a lack of adequate protection. 11 U.S.C. § 362(d)(1). There is no clear definition of "cause" so it is left to the bankruptcy court to make a determination on a case-by-case basis. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir. 1990).

"[U]nder Washington law, the Debtor's and the estate's rights in the Property following the sale, absent a challenge based on applicable procedural or other irregularities in the conduct of the sale itself, are at most in the nature of bare legal title together with a possessory interest, rather than full and unfettered ownership interests and rights in such Property. 11 U.S.C. § 541(a)(1)." *In re Nelson*, Case No. 16-44597, 2017 WL 745595 (E. D. Wash. 2/24/17). In *Nelson*, the Court found "cause" exists to grant relief from stay based on the following facts. First, Movant is a bona fide purchaser that paid the $205,000 bid price to the foreclosure trustee and is 'incurring significant financing charges' to a third party lender that financed such purchase price. Carl Decl. 1:21–22 and 2:8–10, ECF No. 26–1. The Debtor has not provided evidence of any adequate protection of the Movant's interests in the Property. Second, the Debtor not only failed to take any allowed statutory action under the

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 4

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 4 of 9

Washington DTA to cure the default or to stay the foreclosure sale prior to the Trustee's acceptance of Movant's bid, but has also failed to provide any evidence of procedural or other irregularities in relation to such foreclosure sale or otherwise challenge the sale through the filing of any action to void such sale. Based on the Court's determination that invalidity of the physical delivery of the deed, if in fact done in violation of the stay, would not void the entire foreclosure sale, it is appropriate to grant the Movant relief from stay for cause."

In the present case, the Debtor has not provided evidence of any adequate protection of Movant's interest in the Property. In fact, the Debtor has breached two loan modifications offered to her, was found to have participated in bad faith in the Washington State Mediation Program, failed to take any statutory action under the Washington DTA prior to the sale, filed a bare bones Chapter 13 petition in bad faith after the foreclosure sale to cause further delay and expense, is unemployed, and her own late filed schedules show she does not have sufficient income to make the regular monthly payment on the loan, let alone anything to cure the arrears due. Hence, relief should be granted and the stay should be annulled.

### D.  Retroactive Annulment is Appropriate.

Section 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992).[1] Retroactive relief validates acts which violate the automatic stay and would otherwise be void. *Id.* at 573; *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005); *see also E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (retroactive annulment of the stay validates actions taken in contravention of such stay, whereas termination, modification, and conditioning generally take effect only as of the date such relief is granted). Thus, the Code accounts for the fact that it may be inappropriate in certain circumstances to permit a debtor to take advantage of the automatic stay. *Oya v. Wells Fargo (In re Oya)* BAP # SC-19-1095-BKul; 2019 WL 5390007 at *3 (9th Cir. BAP. Oct. 18, 2019)

---

[1] Section 362(d) provides: On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay[.]

Motion for Retroactive Annulment of the Automatic  
Stay and Validation of Execution, Delivery and Recording  
of Trustee's Deed – Page 5

Ghidotti | Berger LL  
1920 Old Tustin Ave.  
Santa Ana, CA 92705  
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 5 of 9

citing *Del Conte v. Torrez (In re DelConte)*, BAP No. 06-1302-SDK, 2007 WL 7535060, at *4 (9th Cir. BAP Aug. 14, 2007) citing *Sherman v. SEC (In re Sherman)*, 441 F.3d 794, 815 (9th Cir. 2006), opinion amended and superseded, 491 F.3d 948 (9th Cir. 2007),.

In deciding whether "cause" exists to retroactively annul the stay under § 362(d)(1), the bankruptcy court is required to examine the circumstances of the particular case and balance the equities of the creditor's position in comparison to that of the debtor's. *Souang v. Fularon (In re Fularon)*, BAP No. 10-1428-JuHPa, 2011 WL 4485202, at *3 (9th Cir. BAP July 11, 2011) (citing *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055). Under this approach, the bankruptcy court considers "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

In *Fjeldsted v. Lien et al.* (*In re Fjeldsted*), 293 B.R. 12, 24 (B.A.P. 9th Cir. 2003), the court identified twelve additional factors that can be relevant in deciding whether retroactive annulment of the stay is justified:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. The debtor's overall good faith (totally of circumstances test);
5. Whether creditors knew of stay but nonetheless took action; thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying with the Code and Rules;
7. The relative ease of restoring the parties to the status quo ante;
8. The costs of annulment to debtors and creditors;
9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or volative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor; and
12. Whether stay relief will promote judicial economy or other efficiencies.

293 B.R. at 25. These factors, however, "are merely a framework for analysis and not a

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 6

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 6 of 9

scorecard," and thus "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Id*. The debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *In re Fularon*, 2011 WL 4485202, at *5 (citing *In re Nat'l Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996)), *aff'd*, 129 F.3d 1052 (9th Cir. 1997) (debtor has the burden of proof under § 362(g)(2) to demonstrate that cause does not exist to annul the stay). *Id*. "[T]here is no per se rule that notice of the bankruptcy case precludes retroactive relief from stay." *Fularon* at *4.

In the present case, the Property was sold prior to Debtor's bankruptcy filing to a bona-fide third party purchaser. It was an unintentional error, if an error at all, that the Trustee's Deed was executed after the bankruptcy filing. Neither the creditor nor the third party purchaser were aware of the post-sale bankruptcy filing. The trustee simply received an email while she was on business in Florida, which did not indicate the sale date or the status of the foreclosure. When the trustee returned, a staff person had prepared the TDUS and it was waiting for her signature. She did not make the connection that this TDUS was related to the email she received while in Florida the week before. The Property has already been sold to a bona-fide third party Ladder Properties LLC who took out financing with Eastside Funding LLC and is paying interest on the loan. There are surplus funds in excess of $7,000 from the sale, which are not listed on the schedules.

The Debtor filed a bad faith bare bones bankruptcy petition. When she finally filed her schedules, they proved she cannot afford to keep the house. The Debtor's own schedule show her income exceeds her debts by $600, **without** including any mortgage or rent. The only income she lists on Schedule I is $1,945.00 in unemployment compensation. At the 341a hearing she stated she did not know when that was going to run out. When the Chapter 13 Trustee asked her if she was looking for work, she said she had kids at home she was teaching. Her Schedule J Expenses list $1,345.00 and $0 for rent or mortgage payment. Obviously she plans to drag this out as long as she can without making a payment. The trial payment plan was $2,139.05, over three and one-half times her available income. Then there is all the arrears that are owed. She doesn't propose to make any post-petition payments. She proposed to pay only $416.67 for a listed $25,000.00 in arrears, which is way understated. As

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 7

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 7 of 9

noted in the Loan Modification Agreement with Trial Payment Plain, if she fails to make the trial payments "all terms revert back to the original mortgage" and the total amount in arrears was $66,070.83 good through 8/1/19." It is bad faith to file a Plan, which the Debtor knows is unfeasible and is simply a delay tactic, as the Debtor is unemployed.

There are no costs for annulment of the stay to debtors or creditors. The trustee's counsel promptly contacted debtor's counsel when advised of the situation and promptly provided him with all the documents he requested as he was trying to find a procedural defect to void the sale but had not found any. Thereafter, the trustee's attorney attempted to resolve this matter numerous times via phone and email as Debtor's counsel had stated he wanted to discuss this matter, but he did not respond. He kept saying he needed more time to try to find something wrong. Movant has been forced to file this motion because Debtor's counsel has failed to respond to trustee's calls and emails.

The debtor failed to file all the required documents or make her payment by the 341(a) hearing. Furthermore, her proposed Plan is clearly unfeasible as noted above. It would be very difficult to unwind a sale at this time. Retroactive annulment of the stay will not cause irreparable injury as the debtor has already been offered two loan modifications and defaulted on both and then failed to participate in mediation in good faith. She cannot afford this house. Debtor has taken no actions to unwind the sale other than file this bankruptcy. If Debtor truly wished to reorganize this debt through a Chapter 13, she has provided no reason as to why a petition was not filed prior to the sale thus preventing or at least stalling it from the outset. Rather, Debtor is seeking only to further frustrate and prejudice Movant's rights. Retroactive annulment of the stay will promote judicial economy and other efficiencies as there will be no need to record a new Trustee's Deed, which would just confuse the chain of title. It will also allow Movant to exit this bankruptcy and Debtor to focus on those debts that can be reorganized.

### III. RELIEF REQUESTED

For the reasons stated above, Movant requests:

1. An Order Terminating the Automatic Stay as to Movant, including retroactive annulment of the Stay as of October 12, 2020, the date of

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 8

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 8 of 9

execution of the Trustee's Deed Upon Sale;

2. In the alternative, an Order Terminating the Automatic Stay for cause pursuant to 11 U.S.C. 362(d)(1) to allow Movant to re-execute and re-record its Trustee's Deed Upon Sale;

3. That the fourteen day stay described in Bankruptcy Rule 4001(a)(3) be waived upon relief;

4. For such other relief as the Court deems proper.

Dated: November 12, 2020    Respectfully Submitted,

GHIDOTTI | BERGER LLP

/s/ Nancy R. Tragarz
Nancy R. Tragarz, Esq. WSBA #56153
Erica Loftis, Esq. WSBA #44308
Counsel for Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C, its successors and/or assignees

Motion for Retroactive Annulment of the Automatic
Stay and Validation of Execution, Delivery and Recording
of Trustee's Deed – Page 9

Ghidotti | Berger LL
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tele: 949-427-2010

Case 20-42304-BDL    Doc 21    Filed 11/12/20    Ent. 11/12/20 14:25:33    Pg. 9 of 9