# EXHIBIT A

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

©Copyright 2011
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**COUNTEROFFER ADDENDUM**
**TO REAL ESTATE PURCHASE AND SALE AGREEMENT**

All terms and conditions of the offer (Real Estate Purchase and Sale Agreement) dated ___**April 25, 2022**___ ,   1

concerning **18610**     **85th Ave E**        **Puyallup**     **WA**   **98375** (the "Property"),  2
              Address                              City              State   Zip

by, **Zillehuma Shakir** _____ , as ___**Buyer**___   3

and the undersigned **Jacarae L Fairbanks** _____ , as ___**Seller**___   4

are accepted, except for the following changes.   5

☐ **The Purchase Price** shall be $ _____   6

_____   7

☑ **Other.**   8

1) Form 21 # 5 Included Items - Refrigerator does not convey with property.   9

2) Form 21 #7 Earnest Money Shall be $10,000.00 and wired within 2 days of mutual acceptance.   10

3) Form 21 # 10 Closing Agent shall be WFG - Maschel Halverson 253-761-8000.   11, 12

4) Form 21 #11 - Closing Date shall be May 26, 2022 but in no event no earlier than 14 days after court approval.   13, 14

5) Form 21 # 12 Charges /Assessments Levied before but Due after Closing shall be assumed by Buyer if any.   15

6) Form 21 # 16  Addenda - 35 E Escalation Addendum shall be removed this agreement. Bankruptcy Addendum, 22EF Evidence of Funds and 65B Occupancy after Closing shall be attached to this Purchase and Sale Agreement.   16, 17, 18

7) Form 22D #8 & 9 This property is part of an HOA - Country Rose HOA. All documents are attached provided by Heather Kelly at Country Rose HOA. Homeowners Transfer Fee - Shall be paid by Buyer if any.   19, 20

8) Form 22A # 2 Financing Contingency Notice to perform shall be removed and  #b shall be checked and i. Waiver of Financing Contingency shall be waived (line 38) shall be 15 days.   21, 22

9) Form 35 Inspection Addendum - See  attached Addendum for changes.   23, 24

10) This sale is subject to court approval.  Property is sold AS-IS with no work orders.  If any work orders are identified by lender as part of Buyers appraisal Buyer shall be responsible for all costs and repairs if any.   25, 26

5 pm

This counteroffer shall expire at 9:00 p.m. on ___**4/27/22 - ~~12 pm~~**___ (if not filled in, two days after it is delivered),   27
unless it is sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the counterofferor,   28
their broker or at the licensed office of their broker. If this counteroffer is not so accepted, it shall lapse and the   29
Earnest Money shall be refunded to Buyer.   30

**All other terms and conditions of the above offer are incorporated herein by reference as though fully set forth.**   31

*Jacarae L Fairbanks*
_____        _____
Signature             Date          Signature             Date

The above counteroffer is accepted.

*Zillehuma Shakir*
_____        _____
Signature             Date          Signature             Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 21
Residential PSA
Rev. 3/21
Page 1 of 6

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
Specific Terms

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

1. **Date:** April 25, 2022       **MLS No.:** 1920678       **Offer Expiration Date:** 4/27/2022

2. **Buyer:** Zillehuma Shakir

3. **Seller:** Jacarae L Fairbanks
   _Seller_                                          _Seller_

4. **Property:** Legal Description attached as Exhibit A.  Tax Parcel No(s).: 602404-031-0
   18610    85th Avenue E         Puyallup              Pierce        WA    98375
   _Address_                        _City_              _County_      _State_   _Zip_

5. **Included Items:** ☑ stove/range;  ☑ refrigerator;  ☐ washer;  ☐ dryer;  ☑ dishwasher;  ☐ hot tub;  ☐ fireplace insert;  ☐ wood stove;  ☐ satellite dish;  ☐ security system;  ☐ attached television(s);  ☐ attached speaker(s);  ☑ microwave;  ☐ generator;  ☐ other

6. **Purchase Price:** $ 485,000.00       **Four Hundred Eighty-Five Thousand**                     Dollars

7. **Earnest Money:** $ 10,000.00       ☐ Check;  ☐ Note;  ☑ Wire;  ☐ Other
   Delivery Date 3 days after mutual acceptance; to be held by ☐ Buyer Brokerage Firm; ☑ Closing Agent

8. **Default:** (check only one) ☑ Forfeiture of Earnest Money;  ☐ Seller's Election of Remedies

9. **Title Insurance Company:** WFG

10. **Closing Agent:** WFG
    _Company_                       _Individual (optional)_

11. **Closing Date:** 5/26/2022       ; **Possession Date:** ☐ on Closing;  ☑ Other  On Or Before 6/24/22

12. **Services of Closing Agent for Payment of Utilities:** ☑ Requested (attach NWMLS Form 22K);  ☐ Waived

13. **Charges/Assessments Levied Before but Due After Closing:** ☐ assumed by Buyer;  ☑ prepaid in full by Seller at Closing

14. **Seller Citizenship (FIRPTA):** Seller ☐ is;  ☑ is not a foreign person for purposes of U.S. income taxation

15. **Agency Disclosure:** Buyer represented by: ☑ Buyer Broker;  ☐ Buyer/Listing Broker (dual agent);  ☐ unrepresented
    Seller represented by: ☑ Listing Broker;  ☐ Listing/Buyer Broker (dual agent);  ☐ unrepresented

16. **Addenda:** 22A(Financing)       22D(Optional Clauses)       22D(Optional Clauses)       22K(Utilities)
    22T(Title Contingency)       35(Inspection)       35E(Escalation)
                                                                      #form 36   _JLF_

---

| | |
|---|---|
| _huma Shakir_ | Jacarae L Fairbanks |
| 04/25/2022 | |
| Buyer Signature                     Date | Seller Signature                     Date |
| Buyer Signature                     Date | Seller Signature                     Date |
| Buyer Address | Seller Address |
| City, State, Zip | City, State, Zip |
| | (000) 000-0000 |
| Buyer Phone No.          Fax No. | Seller Phone No.          Fax No. |
| zillehumashakir@hotmail.com | |
| Buyer E-mail Address | Seller E-mail Address |
| Real Broker LLC          6529 | Keller Williams Tacoma          9271 |
| Buyer Brokerage Firm     MLS Office No. | Listing Brokerage Firm     MLS Office No. |
| Tony Behrend             86712 | Kari Roberts             36720 |
| Buyer Broker (Print)     MLS LAG No. | Listing Broker (Print)     MLS LAG No. |
| (855) 450-0442  (253) 683-9641  (731) 561-3650 | (253) 460-8640  (253) 222-5235 |
| Firm Phone No.   Broker Phone No.   Firm Fax No. | Firm Phone No.   Broker Phone No.   Firm Fax No. |
| wa.broker@therealbrokerage.com | kwtacoma@benkinney.com |
| Firm Document E-mail Address | Firm Document E-mail Address |
| tonyrebroker@gmail.com | kari@kariroberts.com |
| Buyer Broker E-mail Address | Listing Broker E-mail Address |
| 27806                    21488 | 9629                     2166 |
| Buyer Broker DOL License No.   Firm DOL License No. | Listing Broker DOL License No.   Firm DOL License No. |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

a. **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties 4
shall use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take 5
steps to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

b. **Earnest Money.** Buyer shall deliver the Earnest Money by the Delivery Date listed in Specific Term 7 (2 days after 7
mutual acceptance if not filled in) to the party holding the Earnest Money (Buyer Brokerage Firm or Closing Agent). If 8
sent by mail, the Earnest Money must arrive at Buyer Brokerage Firm or Closing Agent by the Delivery Date. If the 9
Earnest Money is held by Buyer Brokerage Firm and is over $10,000.00 it shall be deposited into an interest bearing 10
trust account in Buyer Brokerage Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after 11
deduction of bank charges and fees, will be paid to Buyer. Buyer shall reimburse Buyer Brokerage Firm for bank 12
charges and fees in excess of the interest earned, if any. If the Earnest Money held by Buyer Brokerage Firm is over 13
$10,000.00 Buyer has the option to require Buyer Brokerage Firm to deposit the Earnest Money into the Housing Trust 14
Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer 15
does not complete an IRS Form W-9 before Buyer Brokerage Firm must deposit the Earnest Money or the Earnest 16
Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Buyer 17
Brokerage Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be 18
refunded to Buyer and any such costs remain unpaid, the Buyer Brokerage Firm or Closing Agent may deduct and pay 19
them therefrom. The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and 20
notice of dishonor of any check to the parties and Brokers at the addresses and/or fax numbers provided herein. 21

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 22
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. 23
If either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 24
Money pursuant to RCW 64.04. Closing Agent shall deliver notice of the demand to the other party within 15 days. If 25
the other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the 26
Earnest Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent 27
timely receives an objection or an inconsistent demand from the other party, Closing Agent shall commence an 28
interpleader action within 60 days of such objection or inconsistent demand, unless the parties provide subsequent 29
consistent instructions to Closing Agent to disburse the earnest money or refrain from commencing an interpleader 30
action for a specified period of time. Pursuant to RCW 4.28.080, the parties consent to service of the summons and 31
complaint for an interpleader action by first class mail, postage prepaid at the party's usual mailing address or the 32
address identified in this Agreement. If the Closing Agent complies with the preceding process, each party shall be 33
deemed to have released Closing Agent from any and all claims or liability related to the disbursal of the Earnest 34
Money. If either party fails to authorize the release of the Earnest Money to the other party when required to do so 35
under this Agreement, that party shall be in breach of this Agreement. For the purposes of this section, the term Closing 36
Agent includes a Buyer Brokerage Firm holding the Earnest Money. The parties authorize the party commencing an 37
interpleader action to deduct up to $500.00 for the costs thereof. 38

c. **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 39
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, 40
drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed 41
television antennas; ventilating, air conditioning and heating fixtures; trash compactor; garbage disposal; fireplace 42
doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers; water heaters; installed electrical 43
fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; and other fixtures; and all associated operating 44
remote controls. Unless otherwise agreed, if any of the above items are leased or encumbered, Seller shall acquire 45
clear title before Closing. 46

d. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. 47
The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, 48
presently of record and general to the area; easements and encroachments, not materially affecting the value of or 49
unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not 50
convey or reserve any oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary 51
encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be 52
conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate 53
Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after 54
acquired title. 55



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 04/25/2022 | | | | | | | |
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

e. **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current 56
ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance 57
Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines 58
to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party 59
applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance 60
Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title 61
Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy, together with 62
homeowner's additional protection and inflation protection endorsements, if available. The Title Insurance Company 63
shall send a copy of the preliminary commitment to Seller, Listing Broker, Buyer and Buyer Broker. The preliminary 64
commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and 65
Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be 66
made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, 67
unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described 68
in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance 69
or damages as a consequence of Seller's inability to provide insurable title. 70

f. **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls 71
on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, 72
the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when 73
the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale 74
proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on 75
the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. 76
Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided 77
possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, 78
electrical, and all included items) that becomes inoperative or malfunctions prior to Closing with a system or appliance 79
of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that 80
Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or 81
modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have 82
terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If 83
possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental 84
Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or 85
alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure 86
appropriate hazard and liability insurance policies are in place, as applicable. 87

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon 88
monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy 89
the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit that does not have at least one 90
smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person 91
occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller 92
complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless 93
from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. 94

g. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 95
like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the 96
cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and 97
costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating 98
party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a 99
Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the 100
purposes of completing a reverse exchange. 101

h. **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the 102
escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and 103
lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit 104
report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are 105
delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at 106
Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, 107
Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the 108
Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in Specific Term No. 12, Seller 109
and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility charges in 110
accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service to the 111
Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). 112

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| ZS | 04/25/2022 | | | JLJ | | | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 21
Residential PSA
Rev. 3/21
Page 4 of 6

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## RESIDENTIAL PURCHASE AND SALE AGREEMENT
### General Terms

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or 113
other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that 114
are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid 115
as agreed in Specific Term No. 18. 116

i.   **Sale Information.** Listing Broker and Buyer Broker are authorized to report this Agreement (including price and all 117
terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone 118
else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, 119
and others related to this Sale, to furnish the Listing Broker and/or Buyer Broker, on request, any and all information 120
and copies of documents concerning this sale. 121

j.   **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. 122
income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) 123
under the Foreign Investment in Real Property Tax Act ("FIRPTA") and provide the certification to the Closing Agent 124
within 10 days of mutual acceptance. If Seller is a foreign person for purposes of U.S. income taxation, and this 125
transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount 126
to the Internal Revenue Service. 127

If Seller fails to provide the FIRPTA certification to the Closing Agent within 10 days of mutual acceptance, Buyer may 128
give notice that Buyer may terminate the Agreement at any time 3 days thereafter (the "Right to Terminate Notice"). If 129
Seller has not earlier provided the FIRPTA certification to the Closing Agent, Buyer may give notice of termination of 130
this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right to Terminate Notice. If 131
Buyer gives the Termination Notice before Seller provides the FIRPTA certification to the Closing Agent, this Agreement 132
is terminated and the Earnest Money shall be refunded to Buyer. 133

k.   **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or 134
counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered 135
only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer 136
must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by 137
Buyer Broker, or at the licensed office of Buyer Broker. Documents related to this Agreement, such as NWMLS Form 138
17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, 139
and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Buyer Broker and 140
Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. 141

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or 142
document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Buyer 143
Broker and Buyer Brokerage Firm or both Listing Broker and Listing Brokerage Firm at the e-mail addresses specified 144
on page one of this Agreement; or (ii) Buyer Broker or Listing Broker provide written acknowledgment of receipt of the 145
e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the 146
Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document. 147

l.   **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in 148
this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last 149
calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal 150
holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, 151
Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, 152
shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar 153
date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday 154
as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a 155
Saturday, Sunday, legal holiday, or day when the county recording office is closed. When counting backwards from 156
Closing, any period of time measured in days shall start on the day prior to Closing and if the last day is a Saturday, 157
Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day, moving 158
forward, that is not a Saturday, Sunday or legal holiday (e.g. Monday or Tuesday). If the parties agree upon and attach a 159
legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of 160
computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to 161
the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement. 162

m.   **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and 163
supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall 164
be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in 165
electronic form has the same legal effect and validity as a handwritten signature. 166



| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| ZC | 04/25/2022 | | | JLF | | | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
General Terms

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**n.** **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this ▓▓▓▓▓▓▓▓▓▓▓▓▓ 167 168 169

**o.** **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term 8, shall apply: 170 171

    **i.** **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure. 172 173

    **ii.** **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity. 174 175 176 177

**p.** **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses. 178 179 180 181 182

**q.** **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 183 184 185 186

**r.** **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer. 187 188 189 190 191 192

**s.** **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn. 193 194 195

**t.** **Agency Disclosure.** Buyer Brokerage Firm, Buyer Brokerage Firm's Designated Broker, Buyer Broker's Branch Manager (if any) and Buyer Broker's Managing Broker (if any) represent the same party that Buyer Broker represents. Listing Brokerage Firm, Listing Brokerage Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. If Buyer Broker and Listing Broker are different persons affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. If Buyer Broker and Listing Broker are the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency." 196 197 198 199 200 201 202 203 204

**u.** **Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to which they are a party. The Listing Brokerage Firm's commission shall be apportioned between Listing Brokerage Firm and Buyer Brokerage Firm as specified in the listing. Seller and Buyer hereby consent to Listing Brokerage Firm or Buyer Brokerage Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Brokerage Firm and Buyer Brokerage Firm, as applicable, a portion of their funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) directly to the Firm(s). In any action by Listing or Buyer Brokerage Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries under this Agreement. 205 206 207 208 209 210 211 212

**v.** **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after ▓▓▓▓▓ceptance, Buyer may rescind this Agreem₂▓ at any time up to 3 days thereafter. 213 214 215

**w.** **Information Verification Period.** Buyer shall have 10 days after mutual acceptance to verify all information provided from Seller or Listing Brokerage Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 2.0 days of mutual acceptance. If Buyer gives timely ▓▓▓ce under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 216 217 218 219

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| ZS | 04/25/2022 | | | JLJ | | | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**RESIDENTIAL PURCHASE AND SALE AGREEMENT**
**General Terms**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

x. **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations under this Agreement and that none of the Brokers has agreed to independently investigate or confirm any matter related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other defects arising after construction, such as drainage, leakage, pest, rot and mold problems. In addition, some properties may contain soil or other contamination that is not readily apparent and may be hazardous. Brokers do not have the expertise to identify or assess defective or hazardous products, materials, or conditions. Buyer is urged to use due diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective or hazardous materials and conditions and evaluate the Property as there may be defects and hazards that may only be revealed by careful inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, fire, flood, earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers.

04/25/2022

Buyer's Initials    Date    Buyer's Initials    Date    Seller's Initials    Date    Seller's Initials    Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated **April 25, 2022**                        1

between ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ("Buyer")   2
      Buyer               Buyer

and **Jacarae L Fairbanks** ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ("Seller")   3
    Seller              Seller

concerning **18610    85th Avenue E       Puyallup      WA    98375** (the "Property").   4
   Address            City         State   Zip

5

**1. LOAN APPLICATION.**                                                                                    5

   **a.** **Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to   6
      purchase the Property (the "Loan(s)"): ☒ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA;   7
      ☐ USDA; ☐ Home Equity Line of Credit; ☐ Other ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾   8
      (the "Financing Contingency"). Buyer shall pay ☐ $ ‾‾‾‾‾‾‾‾‾‾; or ☒ _5_ % of the Purchase   9
      Price down, in addition to the Loans. Buyer shall make application for the Loans to pay the balance of the   10
      Purchase Price and pay the application fee, if required, for the subject Property within _5_ days (5 days if   11
      not filled in) after mutual acceptance of this Agreement. For the purposes of this Addendum, "application" means   12
      the submission of Buyer's financial information for the purposes of obtaining an extension of credit including   13
      Buyer's name, income, social security number (if required), the Property address, purchase price, and the loan   14
      amount. If not waived, the Financing Contingency shall survive the Closing Date.   15

   **b.** **Waiver of Financing Contingency.** If Buyer (i) fails to make application for financing for the Property within   16
      the agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes   17
      the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then   18
      the Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this   19
      Paragraph 1(b) also constitutes waiver of Paragraph 5 (Appraisal Less Than Sales Price). For purposes of this   20
      Addendum, "lender" means either the party to whom the application was submitted or the party funding the   21
      loan. Buyer authorizes Listing Broker and Seller to inquire about the status of Buyer's loan approval with lender   22
      any time prior to Closing. Buyer will execute an authorization form, if required by lender, to accomplish the   23
      same.   24

**2. FINANCING CONTINGENCY.** Select "a" or "b" ("a" if neither is selected).   25

   **a.** ☒ **Seller's Notice to Perform.**   26

     **i.** **Notice to Perform.** At any time ___21___ days (21 days if not filled in) after mutual acceptance, Seller   27
       may give "Notice to Perform" requesting that Buyer waive the Financing Contingency and that Seller may   28
       give notice to terminate the Agreement at any time 3 days after delivery of that notice if Buyer does not   29
       earlier waive the Financing Contingency. NWMLS Form 22AR shall be used for this notice.   30

     **ii.** **Notice of Termination.** If Buyer has not previously waived the Financing Contingency, Seller may give   31
       "Notice of Termination" of this Agreement any time 3 days after delivery of Notice to Perform. If Seller gives   32
       Notice of Termination before Buyer has waived the Financing Contingency, this Agreement is terminated   33
       and the Earnest Money shall be refunded to Buyer. NWMLS Form 22AR shall be used for this notice.   34

     **iii.** **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 2(a)   35
       ☐ will; or ☒ will not (will not, if not filled in) constitute waiver of Paragraph 5 (Appraisal Less Than Sales Price).   36

   **b.** ☐ **Automatic Waiver of Financing Contingency.**   37

     **i.** **Waiver.** The Financing Contingency shall conclusively be deemed waived unless within _____ days (21   38
       days if not filled in) after mutual acceptance, Buyer gives notice of termination of this Agreement. If Buyer   39
       gives timely notice of termination, the Earnest Money shall be refunded to Buyer after Buyer delivers written   40
       confirmation from Buyer's lender as required by Paragraph 4.   41

     **ii.** **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 2(b)   42
       ☐ will; or ☐ will not (will not, if not filled in) constitute waiver of Paragraph 5 (Appraisal Less Than Sales Price).   43

| | | | | | |
|---|---|---|---|---|---|
| _ZS_ 04/25/2022 | | | | _JLF_ | |
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**3. LOAN COST PROVISIONS.** Seller shall pay up to ☑ $ 0.00    ; or ☐ _____% of the Purchase Price 44
($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 45
~~_____ ___ buy ____ fin____ __ or other costs allowed by lender~~. That amount shall include 46
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 47
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 48
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 3 is 49
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 50
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 51
of the loan). 52

**4. EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 53
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 54
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 55
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds 56
to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by 57
Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such 58
confirmation. 59

**5. APPRAISAL LESS THAN SALE PRICE.** 60

  **a. Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 61
    may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall include 62
    a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 5. 63

  **b. Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 64

    i. A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 65
      acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 66
      approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect not 67
      to accept a reappraisal or reconsideration of value; 68

    ii. Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 69
      appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to lender, 70
      whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, or USDA 71
      financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the Seller reduces 72
      the Purchase Price to the appraised value. Buyer, however, has the option to buy at the reduced price.); 73

    iii. Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 74
      appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 75
      exceeds the appraised value) to close the sale; or 76

    iv. Seller's rejection of Buyer's notice of low appraisal. 77

    If Seller timely delivers notice of (i) reappraisal or reconsideration of value, or (ii) consent to reduce the Purchase 78
    Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or USDA 79
    financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 80

  **c. Buyer's Reply.** 81

    i. Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 82
      the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency; or (b) 83
      terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 84

    ii. If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 85
      have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 86
      this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 87

    iii. If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, VA, 88
      or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; or (b) 89
      terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 90

    Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest 91
    Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for 92
    notices. 93

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|
| ZC | 04/25/2022 | | | JLF | | | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

6. **INSPECTION.** Seller shall permit inspections required by lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections unless otherwise agreed. | 94 95 96

7. **FHA/VA/USDA - Appraisal Certificate.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Buyer may give the notice of low appraisal in Paragraph 5. | 97 98 99 100 101 102 103 104

   **Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees to satisfy himself/herself that the price and condition of the Property are acceptable. | 105 106 107

8. **VA Amendatory Clause.** If the Buyer is obtaining VA financing, it is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the property described herein, if the contract purchase price or cost exceeds the reasonable value of the property established by the Department of Veterans Affairs. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs. | 108 109 110 111 112 113

9. **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days to accommodate the requirements of Regulation Z of the Truth in Lending Act. This paragraph shall survive Buyer's waiver of this Financing Contingency. | 114 115 116 117 118 119

ZS  04/25/2022

Buyer's Initials    Date       Buyer's Initials    Date       Seller's Initials    Date       Seller's Initials    Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 22D
Optional Clauses Addendum
Rev. 3/21
Page 1 of 2

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# OPTIONAL CLAUSES ADDENDUM TO
# PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___April 25, 2022___     1

between  Zillichuma Shabir _____ ("Buyer")  2
     Buyer                          Buyer

and  Jacarae L Fairbanks _____ ("Seller")  3
     Seller                          Seller

concerning  18610   85th Avenue E        Puyallup     WA  98375  (the "Property").  4
     Address                City        State  Zip

**CHECK IF INCLUDED:**  5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Buyer Broker make no representations  6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of  7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on  8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and  9
encroachments to Buyer's own satisfaction.  10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA  11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting  12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:  13

   ☐ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to  14
   apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's  15
   additional protection and inflation protection endorsements, if available at no additional cost, rather than  16
   the Homeowner's Policy of Title Insurance.  17

   ☐ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for  18
   an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's  19
   Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage  20
   Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and  21
   the cost of any survey required by the title insurer.  22

3. ☑ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish  23
from the Property prior to Buyer taking possession.  24

4. ☑ **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property  25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become  26
the property of Buyer, and may be retained or disposed of as Buyer determines.  27

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:  28
   ☑ public water main; ☑ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ;  29
   ☐ irrigation water (specify provider) _____ ; ☑ natural gas; ☑ telephone; ☑ electricity;  30
   ☑ cable (specify provider) Comcast _____ ; ☐ internet (specify provider) _____ ;  31
   ☐ other _____  32

6. ☐ **Insulation – New Construction.** If this is new construction, Federal Trade Commission Regulations require  33
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish  34
Buyer the information below in writing as soon as available:  35

   WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____  36

   CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____  37

   OTHER INSULATION DATA: _____  38

---

7C   04/25/2022                   JLF

Buyer's Initials  Date    Buyer's Initials  Date    Seller's Initials  Date    Seller's Initials  Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO PURCHASE & SALE AGREEMENT
*Continued*

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite dish and operating equipment; ☐ other _____.

   Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if available from the Association) within _____ days (10 days if not filled in) of mutual acceptance:

   a.  Association rules and regulations, including, but not limited to architectural guidelines;
   b.  Association bylaws and covenants, conditions, and restrictions (CC&Rs);
   c.  Association meeting minutes from the prior two (2) years;
   d.  Association Board of Directors meeting minutes from the prior six (6) months; and
   e.  Association financial statements from the prior two (2) years and current operating budget.

   If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not filled in) of receipt of the above documents or the date that the above documents are due, whichever is earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for in the association documents. If the association documents do not provide which party pays the fee, the fee shall be paid by ☐ Buyer; ☒ Seller (Seller if not filled in).

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the removal of the Excluded Item(s). Excluded Item(s): _____

11. ☐ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows:

   a.  Home warranty provider: _____
   b.  Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together with any included options, and Buyer shall pay any balance.
   c.  Options to be included: _____
       _____ (none, if not filled in).
   d.  Other: _____.

12. ☐ **Other.** _____

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 22T
Title Contingency Addendum
Rev. 3/21
Page 1 of 1

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# TITLE CONTINGENCY ADDENDUM TO
# PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated   **April 25, 2022**    1

| | | |
|---|---|---|
| Buyer | Buyer | ("Buyer") 2 |
| and **Jacarae L Fairbanks** | | ("Seller") 3 |
| Seller | Seller | |
| concerning **18610**   **85th Avenue E** | **Puyallup** | **WA 98375**   (the "Property"). 4 |
| Address | City | State   Zip |

1. **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance, 5
together with any easements, covenants, conditions and restrictions of record. Buyer shall have _____ **5** _____ 6
days (5 days if not filled in) from ☒ the date of Buyer's receipt of the preliminary commitment for title insurance; 7
or ☐ mutual acceptance (from the date of Buyer's receipt, if neither box checked) to give notice of Buyer's 8
disapproval of exceptions contained in the preliminary commitment. If Buyer receives the preliminary 9
commitment before mutual acceptance, Buyer's time to review shall begin on mutual acceptance. 10

Seller shall have _____ **5** _____ days (5 days if not filled in) after Buyer's notice of disapproval to give Buyer 11
notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to clear all 12
disapproved exceptions. 13

If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this 14
Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the 15
Agreement, the Earnest Money shall be returned to Buyer. If Buyer does not timely terminate the Agreement, 16
Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear. 17

2. **Supplemental Title Reports.** If supplemental title reports disclose new exception(s) to the title commitment, 18
then the above time periods and procedures for notice, correction, and termination for the new exception 19
shall apply to the date of Buyer's receipt of the supplemental title report. The Closing date shall be extended as 20
necessary to accommodate the foregoing times for notices. 21

3. **Marketable Title.** This Addendum does not relieve Seller of the obligation to provide marketable title at Closing 22
as provided for in the Agreement.

ZC   04/25/2022

| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 35
Inspection Addendum
Rev. 3/21
Page 1 of 2

**INSPECTION ADDENDUM TO
PURCHASE AND SALE AGREEMENT**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated     April 25, 2022                          1

between   Zillehuma Shakir                                            ("Buyer")   2
          Buyer                                                                  

and   Jacarae L Fairbanks                                             ("Seller")  3
      Seller                                                                      

concerning  18610    85th Avenue E          Puyallup         WA    98375   (the "Property").  4
            Address                          City            State   Zip

1.  **INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with      5
    inspections of the Property and the improvements on the Property. Buyer's inspections may include, at Buyer's   6
    option and without limitation, the structural, mechanical and general condition of the improvements to the     7
    Property, compliance with building and zoning codes, an inspection of the Property for hazardous materials, a  8
    pest inspection, and a soils/stability inspection. Buyer's general home inspection must be performed by Buyer or  9
    a person licensed under RCW 18.280. Buyer may engage specialists (e.g. plumbers, electricians, roofers, etc.)   10
    to conduct further inspections of the Property.                                                                11

    a.  **Sewer Inspection.** Buyer's inspection of the Property ❑ may; ❑ may not (may, if not checked) include an   12
        inspection of the sewer system, which may include a sewer line video inspection and assessment and may     13
        require the inspector to remove toilets or other fixtures to access the sewer line.                        14

2.  **BUYER'S OBLIGATIONS.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of Buyer's  15
    choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any improvements on the    16
    Property without first obtaining Seller's permission. Buyer is solely responsible for interviewing and selecting all  17
    inspectors. Buyer shall restore the Property and all improvements on the Property to the same condition they   18
    were in prior to the inspection. Buyer shall be responsible for all damages resulting from any inspection of the  19
    Property performed on Buyer's behalf.                                                                          20

3.  **BUYER'S NOTICE.** This inspection contingency shall conclusively be deemed waived and Seller shall not be    21
    ~~ d to make any repairs or modifications unless within~~     2    days (10 days if not filled in) after mutual  22
    ~~ nce of this Agreement (the "Initial Inspection Period"), Buyer gives notice (a) approving the inspection and~~   23
    waiving this contingency; (b) disapproving the inspection and terminating the Agreement; ~~(c) that Buyer will conduct~~   24
    ~~additional inspections, or (d) proposing repairs to the property or modifications to the Agreement.~~ If Buyer   25
    disapproves the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. ~~If Buyer~~   26
    ~~proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase price or~~   27
    ~~credits for repairs to be performed after Closing, the parties shall negotiate as set forth in Paragraph 6, below.~~ The   28
    parties may use NWMLS Form 35R to give notices required by this Addendum.                                      29

4.  **INSPECTION REPORT.** Buyer shall not provide the inspection report, or portions of the report, to Seller, unless   30
    Seller requests otherwise or as required by Paragraph 5.                                                       31

    a.  **Waiver of Contingency by Buyer.** If Buyer provides any portion of the inspection report to Seller without   32
        Seller's prior written consent or as required by Paragraph 5, the inspection contingency shall conclusively be   33
        ~~ emed waived.~~                                                                                              34

    b.  **Seller Consent.** The selection of either checkbox below by Seller shall not be considered a counteroffer.   35

        ❑  Seller requests that Buyer provide the inspection report to Seller.                                     36

        ❑  If Buyer requests repairs or modifications to the Agreement, Seller requests that Buyer provide to Seller   37
           only the portions of the inspection report related to the requested repairs or modifications to the     38
           Agreement.                                                                                             39

5.  **ADDITIONAL TIME FOR INSPECTIONS.** If an inspector so recommends, Buyer shall have additional time to        40
    obtain further evaluation of any item by a specialist at Buyer's option and expense if, on or before the end of the   41
    Initial Inspection Period, Buyer provides Seller a copy of the inspector's recommendation and notice that Buyer   42
    will seek additional inspections. If Buyer gives timely notice of additional inspections, Buyer shall have      43
        5       (5 days if not filled in) after giving the notice to obtain the additional inspection(s) as recommended   44
    by the inspector.                                                                                             45

ZS    04/25/2022              _____  _____    JLF  _____    _____  _____
Buyer's Initials    Date      Buyer's Initials  Date    Seller's Initials   Date        Seller's Initials   Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**INSPECTION ADDENDUM
TO PURCHASE AND SALE AGREEMENT**
*Continued*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**6. BUYER'S REQUESTS FOR REPAIRS OR MODIFICATIONS.** If Buyer requests repairs or modifications pursuant to Paragraph 3, the parties shall negotiate as set forth in this Paragraph 6. Buyer's initial request and Seller's response made in accordance with the following procedures are irrevocable for the time period provided.

    **a. Seller's Response to Request for Repairs or Modifications.** Seller shall have _____**3**_____ days (3 days if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller (i) agrees to the repairs or modifications proposed by Buyer; (ii) agrees to some of the repairs or modifications proposed by Buyer; (iii) rejects all repairs or modifications proposed by Buyer; or (iv) offers different or additional repairs or modifications. If Seller agrees to the terms of Buyer's request for repairs or modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If Seller does not agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to reply, as follows:

    **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall have ____**3**____ days (3 days if not filled in) from either the day Buyer receives Seller's response or, if Seller fails to timely respond, the day Seller's response period ends, whichever is earlier, to (i) accept the Seller's response at which time this contingency shall be satisfied; (ii) agree with the Seller on other remedies; or (iii) disapprove the inspection and terminate the Agreement, in which event, the Earnest Money shall be refunded to Buyer.

    **ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set forth in Paragraph 6(b). Buyer's inaction during Buyer's reply period shall result in waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever and this contingency shall be deemed waived.

**7. REPAIRS.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's expense in a commercially reasonable manner and in accordance with all applicable laws no fewer than ____**3**____ days (3 days if not filled in) prior to Closing Date. In the case of hazardous materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a professional selected by Seller. Seller's repairs are subject to re-inspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer elects to order and pay for such re-inspection. If Buyer agrees to pay for any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to review the terms of that agreement.

**8. OIL STORAGE TANKS.** Any inspection regarding oil storage tanks or contamination from such tanks shall be limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise agreed in writing by Buyer and Seller.

**9. ON-SITE SEWAGE DISPOSAL SYSTEMS ADVISORY.** Buyer is advised that on-site sewage disposal systems, including "septic systems," are subject to strict governmental regulation and occasional malfunction and even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum).

**10. ☐ NEIGHBORHOOD REVIEW CONTINGENCY.** If the box is checked, Buyer's inspection includes Buyer's subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with the Buyer's intended use of the Property (the "Neighborhood Review). The Neighborhood Review may include Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within _____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

_____  04/25/2022  _____  _____  _____  _____  _____  _____
Buyer's Initials    Date     Buyer's Initials    Date     Seller's Initials    Date     Seller's Initials    Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 22K
Identification of Utilities Addendum
Rev. 3/21
Page 1 of 1

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___04/25/22___    1

between   Zillehuma Shakir                                  ("Buyer")   2
       Buyer                  Buyer

and   Jacarae L Fairbanks                                    ("Seller")   3
       Seller                 Seller

concerning   18610    85th Ave E          Puyallup         WA   98375    (the "Property").   4
       Address                 City         State   Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:   7

| | | | |
|---|---|---|---|
| WATER DISTRICT | **Rainier Water** | 253-573-6634 | |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| SEWER DISTRICT: | **Pierce County Sewer** | 253-798-4020 | |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| | **Lemay** | 253-875-5053 | |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| | **TPU** | 253-502-8600 | |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| GAS: | **PSE** | 1-888-225-5773 | |
| | Name | | e-mail or website (optional) |
| | Address | | |
| | City, State, Zip | | Fax. No. (optional) |
| SPECIAL DISTRICT(S): | | | |
| (local improvement districts or | Name | | e-mail or website (optional) |
| utility local improvement districts) | Address | | |
| | City, State, Zip | | Fax. No. (optional) |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Buyer Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Buyer Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.   33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Buyer Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.   36

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| *ZC* | 04/25/22 | | | *JF* | 04/22/2022 | | |
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

# BANKRUPTCY ADDENDUM

This Addendum to PSA Specific Terms ("Addendum") is entered into this day of ___04/25/22___, with respect to United States Bankruptcy Court for the Western District of Washington at Tacoma, Case No. 19-41417 by and between Jacarae Fairbanks ("Seller") and ___Zillehuma Shakir___ ("Buyer").

1.    This is an addendum to the Residential Real Estate Purchase and Sale Agreement and said agreement and any and all addenda thereto, including this Addendum, shall be referred to as the "Sale Agreement".

To the extent the terms of this Addendum contradict or conflict with the terms of the Residential Real Estate Purchase and Sale Agreement Specific Terms, this Addendum controls.

2.    The sale of the property addressed herein is subject to Bankruptcy Court approval in the bankruptcy proceeding identified above, upon notice and hearing and the Seller's rights and obligations hereunder are subject to Seller obtaining Bankruptcy Court approval to sell and transfer the property subject hereto, free and clear of liens and encumbrances, with liens and encumbrances to attach to the proceeds thereof as evidenced by a final, non-appealed order.

3.    Within forty-eight (48) hours of the mutual execution of the Sale Agreement and this Addendum, Buyer shall deliver to Listing Agent's office a certified or cashier's check in the amount of $188.00 payable to "the Law Offices of David Smith, PLLC , Seller's bankruptcy attorney, to cover the costs of filing the necessary motion with the United States Bankruptcy Court to approve the sale contemplated hereunder.  The $188.00 is absolutely non-refundable to Buyer, but said amount will be applied to the purchase price upon closing.  In the event Buyer fails to deliver the $188.00 as provided hereunder, this Sale Agreement shall terminate au────────

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

4.     The property subject hereto is being sold and is accepted by Buyer "AS IS, WHERE IS" without any warranties or representations of any kind or nature, either expressed or implied, except as expressly provided in the Addendum.

5.     Buyer may not rely on Seller, Seller's agents, Buyer's agents, or the bankruptcy debtors as to the condition of the property and no person acting on behalf of Seller is authorized to make any such representation, agreement, statement, warranty, guaranty or promise regarding the property or any aspect of the property.

6.     In the event of Seller's default under the Sale Agreement, Buyer's recourse is absolutely limited to return of any refundable earnest money, less applicable charges or costs of Buyer.

7.     The purchase price shall be paid in cash at closing.   Seller shall not carry any portion of the purchase price.   Buyer shall be responsible to pay any and all of Buyer's expenses associated with Buyer's loan or financing, including loan costs, creditor report, appraisal charge, lender's title policy and other associated expenses or costs, unless specifically agreed otherwise, signed by the Trustee and approved by Bankruptcy Court.

8.     The property and the grounds will not be maintained by Seller pending closing.

9.     The United States Bankruptcy Court for the Western District of Washington at Tacoma retains exclusive jurisdiction over the property subject hereto and any and all issues arising hereunder, including but not limited to any dispute between        parties under the Sale Agreement and the Addendum.

10.     Buyer accepts the property subject to any and all conditions disclosed in any inspection or pest inspection regarding the property and Seller is under no obligation to make any repairs to the

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

11.   Regarding the Counteroffer Addendum to Real Estate Purchase and Sale Agreement, Addendum/Amendment to Purchase and Sale Agreement, Short Sale Addendum to Purchase & Sale Agreement, Financing Addendum to Purchase & Sale Agreement, the Optional Clauses Addendum to Purchase and Sale Agreement and the Inspection Addendum Purchase and Sale Agreement Buyer's Satisfaction, Well Addendum to Purchase and Sale Agreement, Septic Addendum to Purchase & Sale Agreement, and any and all other addenda to the Sale Agreement, Seller is not responsible for any costs or expenses associated therewith and in the event any of said addenda address, identify or require Seller to respond thereunder indicating Seller's agreement or rejection to changes or modifications thereof, and Seller does not give timely notice or response thereto, Seller will be deemed to have rejected such and Buyer _____ Sale Agreement within three (3) days after the deadline for Seller's response or notice.

SELLER:                               BUYER:

_Jacarae L Fairbanks_          _Zillehuma Shakir_     04/25/22
Jacarae Fairbanks              NAME
DATED: 04/22/22                DATED: 04/25/22

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## EVIDENCE OF FUNDS ADDENDUM
## TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated  **April 25, 2022**  1

between  **Zillehuma Shakir**  ("Buyer")  2
Buyer                                                  Buyer

and  **Jacarae L Fairbanks**  ("Seller")  3
Seller                                                Seller

concerning  **18610    85th Ave E**      **Puyallup**    **WA   98375**   (the "Property").  4
Address                                    City                    State    Zip

**1.    DEFINITIONS.**  5

a. "Evidence" means document(s) from a financial institution(s) in the United States showing that Buyer has  6
sufficient cash or cash equivalent in United States funds.  7

b. "Non-Contingent Funds" means funds that Buyer currently has in its possession and for which there is no  8
contingency, such as financing (NWMLS Form 22A or equivalent), sale of Buyer's property (NWMLS Form  9
22B or equivalent), or pending sale of Buyer's property (NWMLS Form 22Q or equivalent).  10

c. "Contingent Funds" means funds that Buyer does not currently have, but expects to receive from another  11
source prior to Closing, and for which there is no contingency, such as a loan, proceeds from the sale of  12
other property or stock, retirement funds, foreign funds, a gift, or future earnings.  13

**2. ☑ EVIDENCE OF NON-CONTINGENT FUNDS.** Buyer is relying on Non-Contingent Funds for payment of the  14
Purchase Price. Buyer shall provide Evidence to Seller of such funds within **1** days (3 days if not  15
filled in) of mutual acceptance. Unless Buyer discloses other sources of funds for the payment of the Purchase  16
Price, Buyer represents that the Non-Contingent Funds are sufficient to pay the Purchase Price. Buyer shall not  17
use such Non-Contingent Funds for any purpose other than the purchase of the Property without Seller's prior  18
written consent. If Buyer fails to timely provide such Evidence, Seller may give notice terminating this  19
Agreement any time before such Evidence is provided. Upon Seller's notice of termination under this  20
Addendum, the Earnest Money shall be refunded to Buyer.  21

**3. ☐ DISCLOSURE OF CONTINGENT FUNDS.** Buyer is relying on Contingent Funds for the Purchase Price:  22

☐ Loan: _____  23

☐ Sale of the following owned by Buyer: _____  24

☐ Gift of $ _____ from _____  25

☐ Funds not readily convertible to liquid United States funds (describe): _____  26

_____  27

☐ Other (describe): _____  28

Buyer shall provide Evidence to Seller _____ days (10 days if not filled in) prior to Closing that the funds  29
relied upon in Section 3 have been received or are immediately available to Buyer. If Buyer fails to timely  30
provide such Evidence, Seller may give notice terminating this Agreement any time before such Evidence is  31
provided. Buyer shall provide Seller with additional information about such funds as may be reasonably  32
requested by Seller from time to time.  Upon Seller's notice of termination under this Addendum, the Earnest  33
Money shall be refunded to Buyer.  34

If Buyer disclosed that Buyer is obtaining a loan, Seller shall permit an appraisal of the Property and inspections  35
required by lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and  36
well inspections. Seller is not obligated to pay for such inspections unless otherwise agreed.  37

**4.    BUYER DEFAULT.** If Buyer fails to timely close because the Contingent Funds identified in Section 3 are not  38
available by Closing, Buyer shall be in default and Seller shall be entitled to remedies as provided for in the  39
Agreement.  40

Buyer's Initials   Date          Buyer's Initials   Date          Seller's Initials   Date          Seller's Initials   Date

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**COPY**

**ALASKA USA FEDERAL CREDIT UNION**
PO Box 196613 Anchorage, Alaska 99519-6613
www.alaskausa.org

**STATEMENT OF ACCOUNT**
ACCOUNT
STATEMENT PERIOD
FROM 03-15-22
THROUGH 04-14-22
PAGE 1

ZILLE H SHAKIR
24303 184TH AVE SE
COVINGTON WA 98042-4891




## ACCOUNT SUMMARY

| SHARE ACCOUNTS | | DIVIDENDS YEAR-TO-DATE | WITHHOLDING YEAR-TO-DATE | PREVIOUS BALANCE | NEW BALANCE |
|---|---|---|---|---|---|
| 10 | PREM SAV | 12.39 | 0.00 | 50,248.18 | 53,690.81 |
| 70 | CONV CHEK | 0.00 | 0.00 | 255.16 | 400.00 |
| | TOTAL SHARE ACCOUNTS | | | | 54,090.81 |

| LOANS | | | SCHEDULED PAYMENT AMOUNT | NEXT PAYMENT DUE DATE | NEW BALANCE |
|---|---|---|---|---|---|
| 01 | 2019 HYUNDAI KONA AWD | | 440.22 | 05-04-22 | 10,533.06 |

## PREM SAV - 10

| Effective | Posted | TRANSACTION DESCRIPTION | AMOUNT | BALANCE | EXPANDED TRANSACTION DESCRIPTION |
|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | | 50,248.18 | |
| 03-17 | 03-16 | DEPOSIT ACH KROGER FMHR | 900.00 | 51,148.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 03-24 | 03-23 | DEPOSIT ACH KROGER FMHR | 900.00 | 52,048.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 03-26 | 03-26 | WITHDRAWAL ULTRABRANCH-PC TRANSFER TO SHARE 70 | 1000.00 - | 51,048.18 | |
| 03-26 | 03-26 | WITHDRAWAL ULTRABRANCH-PC TRANSFER | 63.00 - | 50,985.18 | TO LOAN #############9742 |
| 03-31 | 03-30 | DEPOSIT ACH KROGER FMHR | 900.00 | 51,885.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 03-31 | 03-31 | DEPOSIT DIVIDEND 0.100% | 12.39 | 51,897.57 | ANNUAL PERCENTAGE YIELD EARNED 0.10% FROM 01/01/22 THROUGH 03/31/22 BASED ON AVERAGE DAILY BALANCE OF 50,241.21 |
| 04-04 | 04-04 | WITHDRAWAL TRANSFER TO SHARE 70 | 6.76 - | 51,890.81 | |
| 04-07 | 04-06 | DEPOSIT ACH KROGER FMHR | 900.00 | 52,790.81 | TYPE: PAYROLL CO: KROGER FMHR |
| 04-14 | 04-13 | DEPOSIT ACH KROGER FMHR | 900.00 | 53,690.81 | TYPE: PAYROLL CO: KROGER FMHR |
| | | NEW BALANCE | | 53,690.81 | |

DIVIDEND YEAR TO DATE 12.39

## CONV CHEK - 70

**BALANCES DURING THIS STATEMENT:**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 03-15 | 245.22 | 03-16 | 445.22 | 03-23 | 645.22 |
| 03-24 | 341.22 | 03-26 | 679.24 | 03-27 | 233.46 |
| 03-30 | 433.46 | 04-04 | 0.00 | 04-06 | 200.00 |
| 04-13 | 400.00 | | | | |

CHECKS IN NUMERICAL ORDER:  (0 TOTALING  $0.00)

OTHER WITHDRAWALS/DEBITS:  (6 TOTALING  $1861.92)

| Effective | Posted | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 03-15 | 03-15 | WITHDRAWAL POS #207400067437 FRED-MEYER #0028 FRED MEYER 028 BURIEN WA | 9.94 |
| 03-24 | 03-24 | WITHDRAWAL AT ATM #208300005511 EVER1 2402 AUBURN WAY SOUTH AUBURN WA | 304.00 |
| 03-26 | 03-26 | WITHDRAWAL DEBIT CARD PURCHASE 03/26 PURCH 2270120208510000019828 18009505114 CITIBANK, N.A. SIOUX FALLS SD | 550.00 |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**COPY**

**ALASKA USA FEDERAL CREDIT UNION**
PO Box 196613  Anchorage, Alaska 99519-6613
www.alaskausa.org

**STATEMENT OF ACCOUNT**
ACCOUNT
STATEMENT PERIOD
FROM                03-15-22
THROUGH             04-14-22
PAGE                2

## CONV CHEK – 70 (CONTINUED)

| Effective | Posted | DESCRIPTION | AMOUNT |
|-----------|--------|-------------|--------|
| 03-26 | 03-26 | WITHDRAWAL DEBIT CARD PURCHASE | 111.98 |
|  |  | 03/26 PURCH 249416620852085250B373 REPUBLIC SERVICES TRASH 866-576-5548 AZ |  |
| 03-27 | 03-27 | WITHDRAWAL DEBIT CARD PURCHASE | 445.78 |
|  |  | 03/26 PURCH 244921520852085237174B PUGET SOUND ENERGY INC 425-454-6363 WA |  |
| 04-04 | 04-04 | WITHDRAWAL TRANSFER TO LOAN 01 | 440.22 |

**DEPOSITS/OTHER CREDITS:**        (7 TOTALING $ 2006.76)

| Effective | Posted | DESCRIPTION | AMOUNT |
|-----------|--------|-------------|--------|
| 03-17 | 03-16 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 03-24 | 03-23 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 03-28 | 03-28 | DEPOSIT ULTRABRANCH-PC TRANSFER FROM SHARE 10 | 1000.00 |
| 03-31 | 03-30 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 04-04 | 04-04 | DEPOSIT TRANSFER FROM SHARE 10 | 6.76 |
| 04-07 | 04-06 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 04-14 | 04-13 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |

**CHECKING SUMMARY:**

| | |
|---|---|
| PREVIOUS BALANCE | 255.16 |
| PLUS  7 DEPOSITS/OTHER CREDITS TOTALING | 2006.76 |
| LESS  0 CHECKS TOTALING | 0.00 |
| LESS  6 OTHER WITHDRAWALS/DEBITS TOTALING | 1861.92 |
| NEW BALANCE | 400.00 |

## LOAN - 01 (2019 HYUNDAI KONA AWD) 4.100%

| Effective | Posted | TRANSACTION DESCRIPTION | AMOUNT | PRINCIPAL | FINANCE CHARGE | LATE FEE | BALANCE |
|-----------|--------|-------------------------|--------|-----------|----------------|----------|---------|
|  |  | PREVIOUS BALANCE |  |  |  |  | 10935.20 |
| 04-04 | 04-04 | PAYMENT TRANSFER FROM SHARE 70 | 440.22 | 402.14 | 38.08 | 0.00 | 10533.06 |
|  |  | NEW BALANCE |  |  |  |  | 10533.06 |
|  |  | INTEREST YEAR TO DATE | 156.89 |  |  |  |  |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

# ALASKA USA FEDERAL CREDIT UNION

**PLEASE USE ALASKA USA'S ULTRABRANCH SERVICE
TO CONFIRM AUTOMATIC TRANSFERS AND DEPOSITS**
alaskausa.org * (888) 258-7228 or (907) 258-7228

**FOR OTHER QUESTIONS, CALL THE MEMBER SERVICE CENTER**
(800) 525-9094 or (907) 563-4567 * TTY/Hearing Impaired (800) 742-7084
24 hours a day, 7 days a week

**TO PROVIDE WRITTEN NOTICE REGARDING ERRORS OR QUESTIONS, SEND INQUIRIES TO:**

Alaska USA Federal Credit Union
P.O. Box 196613
Anchorage, Alaska 99519-6613

INCLUDE:  1. Your name and account number.
2. The transaction involved, including the date and check number, if applicable.
3. The dollar amount of the check, transaction, or suspected error.
4. A detailed description of the question, error, or other problem.

* **In Case of Errors or Questions About Your Share Accounts:** Call us at the above number or write us at the above address as soon as you can if you think your statement is wrong or if you need more information about a transaction on the statement. You must notify Alaska USA of errors or other problems IN WRITING no later than sixty (60) days after the FIRST statement of account containing an error or problem is made available to you. However, if the error or problem involves more than one unauthorized signature or alteration by the same individual, you must notify Alaska USA IN WRITING no later than thirty (30) days after the FIRST statement containing the FIRST unauthorized transaction is made available to you. If you do not notify the credit union IN WRITING within these established time frames, you will have waived your right to assert any claim against Alaska USA for errors, unauthorized transactions or signatures, alterations or other problems; and Alaska USA shall not be liable for these or any related payments or charges made from or to your account.

* **In Case of Errors or Questions About Your Electronic Transfers:** Call us at the above number or write us at the above address as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt.

|  | Consumer Accounts | Accounts |
|---|---|---|
| We must hear from you: | No later than sixty (60) days after the FIRST statement on which the error or problem occurred is made available to you. | No later than one (1) business day after the effective date of the transaction. |

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the funds during the time it takes us to complete our investigation. (Business days are Monday through Friday, excluding Federal holidays.)

* **In Case of Errors or Questions About Your Credit Line Loan Bill and Statement:** If you think your bill and statement is wrong, or if you need more information about a transaction on your bill and statement, WRITE us on a separate sheet at the above address as soon as possible. We must hear from you no later than sixty (60) days after the FIRST bill and statement on which the error or problem appeared is made available to you. You may call us, but doing so will not preserve your rights.

You do not have to pay any amount in question while we are investigating your claim, but you are still obligated to pay the parts of your bill that are not in question. During the investigation, we cannot report you as delinquent or take any action to collect the amount in question.

## IMPORTANT INFORMATION REGARDING CREDIT LINE LOAN BILL AND STATEMENT

* **Outstanding Loan Balance:** The outstanding loan balance is the unpaid loan balance at the close of each calendar day after all payments and advances for the day have been posted to the account.

* **Finance Charges:** Finance charges are calculated whenever any change in the outstanding loan balance occurs by multiplying the outstanding loan balance by the annual percentage rate (calculated as daily factor) times the number of days the loan balance was outstanding since the last computation of finance charges and is credited to the account upon receipt or payments.

* **Late Fees:** Loans in default seven (7) days or more will be assessed a late fee of 20% of the interest due upon receipt of payment with a minimum of five (5) cents and a maximum of $25.00. There is no maximum late fee on loans in default three (3) payments or more.

* **Minimum Payment:**

  * Unsecured credit line loans: A minimum scheduled payment is due each billing cycle, whether or not the loan was paid ahead or the balance increased during the cycle. This minimum payment shall be $10.00 or 3% of the outstanding balance, whichever is greater, plus any amount in excess of the authorized credit limit at the time of billing.

  * Secured credit line loans: A minimum scheduled payment is due each billing cycle, whether or not the loan was paid ahead or the balance increased during the cycle. The minimum payment shall be $25.00 or 1.5% of the outstanding balance, whichever is greater, plus any amount in excess of the authorized credit limit at the time of billing.

* **Prepayments:** Credit line loans may be paid in full or prepaid in any amount at any time.

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**COPY**

**ALASKA USA FEDERAL CREDIT UNION**
PO Box 196613 Anchorage, Alaska 99519-6613
www.alaskausa.org

**STATEMENT OF ACCOUNT**

| ACCOUNT | |
|---|---|
| STATEMENT PERIOD | |
| FROM | 02-15-22 |
| THROUGH | 03-14-22 |
| PAGE | 1 |

ZILLE H SHAKIR
24303 184TH AVE SE
COVINGTON WA 98042-4831

## ACCOUNT SUMMARY

| SHARE ACCOUNTS | | DIVIDENDS YEAR-TO-DATE | WITHHOLDING YEAR-TO-DATE | PREVIOUS BALANCE | NEW BALANCE |
|---|---|---|---|---|---|
| 10 | PREM SAV | 0.00 | 0.00 | 49,648.18 | 50,248.18 |
| 70 | CONV CHEK | 0.00 | 0.00 | 483.48 | 255.16 |
| | TOTAL SHARE ACCOUNTS | | | | 50,503.34 |

| LOANS | | | SCHEDULED PAYMENT AMOUNT | NEXT PAYMENT DUE DATE | NEW BALANCE |
|---|---|---|---|---|---|
| 01 | 2019 HYUNDAI KONA AWD | | 440.22 | 04-04-22 | 10,935.20 |

### PREM SAV – 10

| Effective | Posted | TRANSACTION DESCRIPTION | AMOUNT | BALANCE | EXPANDED TRANSACTION DESCRIPTION |
|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | | 49648.18 | |
| 02-17 | 02-16 | DEPOSIT ACH KROGER FMHR | 900.00 | 50548.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 02-23 | 02-23 | WITHDRAWAL ACH ROBINHOOD | 1000.00 - | 49548.18 | TYPE: DEBITS CO: ROBINHOOD |
| 02-23 | 02-23 | WITHDRAWAL ACH ROBINHOOD | 1000.00 - | 48548.18 | TYPE: DEBITS CO: ROBINHOOD |
| 02-24 | 02-23 | DEPOSIT ACH KROGER FMHR | 900.00 | 49448.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 03-01 | 03-01 | WITHDRAWAL ACH ROBINHOOD | 1000.00 - | 48448.18 | TYPE: DEBITS CO: ROBINHOOD |
| 03-03 | 03-02 | DEPOSIT ACH KROGER FMHR | 900.00 | 49348.18 | TYPE: PAYROLL CO: KROGER FMHR |
| 03-10 | 03-09 | DEPOSIT ACH KROGER FMHR | 900.00 | 50248.18 | TYPE: PAYROLL CO: KROGER FMHR |
| | | NEW BALANCE | | 50248.18 | |
| | | DIVIDEND YEAR TO DATE | 0.00 | | |

### CONV CHEK – 70

**BALANCES DURING THIS STATEMENT:**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 02-15 | 483.48 | 02-16 | 683.48 | 02-19 | 518.99 |
| 02-23 | 718.99 | 02-26 | 568.99 | 02-28 | 422.99 |
| 03-02 | 622.99 | 03-04 | 182.77 | 03-09 | 382.77 |
| 03-12 | 298.71 | 03-13 | 255.16 | | |

**CHECKS IN NUMERICAL ORDER:** (0 TOTALING $ 0.00)

**OTHER WITHDRAWALS/DEBITS:** (7 TOTALING $ 1028.32)

| Effective | Posted | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 02-19 | 02-19 | WITHDRAWAL DEBIT CARD PURCHASE | 164.49 |
| | | 02/19 PURCH 244921520502050217 1984 AIRBNB HM8AKWRRPS AIRBNB.COM CA | |
| 02-26 | 02-26 | WITHDRAWAL ULTRABRANCH-PC TRANSFER TO LOAN ###########9742 | 150.00 |
| 02-28 | 02-28 | WITHDRAWAL DEBIT CARD PURCHASE | 146.00 |
| | | 02/28 PURCH 249064120597050592614166 NCOURT *WAKENT 844-4008880 WA | |
| 03-04 | 03-04 | WITHDRAWAL TRANSFER TO LOAN 01 | 440.22 |
| 03-12 | 03-12 | WITHDRAWAL POS #207118784057 99 RANCH #1791 KENT WA | 31.99 |
| 03-12 | 03-12 | WITHDRAWAL POS #207122347520 ARCO#07073ARCO #07073 COVINGTON WA | 52.07 |
| 03-13 | 03-13 | WITHDRAWAL DEBIT CARD PURCHASE | 43.55 |
| | | 03/12 PURCH 249348720712072250 1705 INTERNATIONAL FOOD BAZAAR KENT WA | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**COPY**

**ALASKA USA FEDERAL CREDIT UNION**
PO Box 196613 Anchorage, Alaska 99519-6613
www.alaskausa.org

---

## CONV CHEK - 70 (CONTINUED)

**DEPOSITS/OTHER CREDITS:** (4 TOTALING $ 800.00)

| Effective | Posted | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 02-17 | 02-16 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 02-24 | 02-23 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 03-03 | 03-02 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |
| 03-10 | 03-09 | DEPOSIT ACH KROGER FMHR TYPE: PAYROLL CO: KROGER FMHR | 200.00 |

**CHECKING SUMMARY:**

| | |
|---|---|
| PREVIOUS BALANCE | 483.48 |
| PLUS 4 DEPOSITS/OTHER CREDITS TOTALING | 800.00 |
| LESS 0 CHECKS TOTALING | 0.00 |
| LESS 7 OTHER WITHDRAWALS/DEBITS TOTALING | 1028.32 |
| NEW BALANCE | 255.16 |

## LOAN - 01 (2019 HYUNDAI KONA AWD) 4.100%

| Effective | Posted | TRANSACTION DESCRIPTION | AMOUNT | PRINCIPAL | FINANCE CHARGE | LATE FEE | BALANCE |
|---|---|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | | | | | 11339.75 |
| 03-04 | 03-04 | PAYMENT TRANSFER FROM SHARE 70 | 440.22 | 404.55 - | 35.67 | 0.00 | 10935.20 |
| | | NEW BALANCE | | | | | |
| | | INTEREST YEAR TO DATE | 118.81 | | | | |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

# ALASKA USA FEDERAL CREDIT UNION

**PLEASE USE ALASKA USA'S ULTRABRANCH SERVICE
TO CONFIRM AUTOMATIC TRANSFERS AND DEPOSITS**
alaskausa.org * (888) 258-7228 or (907) 258-7228

**FOR OTHER QUESTIONS, CALL THE MEMBER SERVICE CENTER**
(800) 525-9094 or (907) 563-4567 * TTY/Hearing Impaired (800) 742-7084
24 hours a day, 7 days a week

**TO PROVIDE WRITTEN NOTICE REGARDING ERRORS OR QUESTIONS, SEND INQUIRIES TO:**

Alaska USA Federal Credit Union
P.O. Box 196613
Anchorage, Alaska 99519-6613

INCLUDE:  1.  Your name and account number.
2.  The transaction involved, including the date and check number, if applicable.
3.  The dollar amount of the check, transaction, or suspected error.
4.  A detailed description of the question, error, or other problem.

* **In Case of Errors or Questions About Your Share Accounts:** Call us at the above number or write us at the above address as soon as you can if you think your statement is wrong or if you need more information about a transaction on the statement. You must notify Alaska USA of errors or other problems IN WRITING no later than sixty (60) days after the FIRST statement of account containing an error or problem is made available to you. However, if the error or problem involves more than one unauthorized signature or alteration by the same individual, you must notify Alaska USA IN WRITING no later than thirty (30) days after the FIRST statement containing the FIRST unauthorized transaction is made available to you. If you do not notify the credit union IN WRITING within these established time frames, you will have waived your right to assert any claim against Alaska USA for errors, unauthorized transactions or signatures, alterations or other problems; and Alaska USA shall not be liable for these or any related payments or charges made from or to your account.

* **In Case of Errors or Questions About Your Electronic Transfers:** Call us at the above number or write us at the above address as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt.

| | Consumer Accounts | |
|---|---|---|
| **We must hear from you:** | No later than sixty (60) days after the FIRST statement on which the error or problem occurred is made available to you. | No later than one (1) business day after the effective date of the transaction. |

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the funds during the time it takes us to complete our investigation. (Business days are Monday through Friday, excluding Federal holidays.)

* **In Case of Errors or Questions About Your Credit Line Loan Bill and Statement:** If you think your bill and statement is wrong, or if you need more information about a transaction on your bill and statement, WRITE us on a separate sheet at the above address as soon as possible. We must hear from you no later than sixty (60) days after the FIRST bill and statement on which the error or problem appeared is made available to you. You may call us, but doing so will not preserve your rights.

You do not have to pay any amount in question while we are investigating your claim, *but you are still obligated to* pay the parts of your bill that are not in question. During the investigation, we cannot report you as delinquent or take any action to collect the amount in question.

## IMPORTANT INFORMATION REGARDING CREDIT LINE LOAN BILL AND STATEMENT

* **Outstanding Loan Balance:** The outstanding loan balance is the unpaid loan balance at the close of each calendar day after all payments and advances for the day have been posted to the account.

* **Finance Charges:** Finance charges are calculated whenever any change in the outstanding loan balance occurs by multiplying the outstanding loan balance by the annual percentage rate (calculated as daily factor) times the number of days the loan balance was outstanding since the last computation of finance charges. Finance charges are collected upon receipt of payments.

* **Late Fees:** Loans in default seven (7) days or more will be assessed a late fee of 20% of the interest due upon receipt of payment with a minimum of five (5) cents and a maximum of $25.00. There is no maximum late fee on loans in default three (3) payments or more.

* **Minimum Payment:**

  *  Unsecured credit line loans: A minimum scheduled payment is due each billing cycle, whether or not the loan was paid ahead or the balance increased during the cycle. This minimum payment shall be $10.00 or 3% of the outstanding balance, whichever is greater, plus any amount in excess of the authorized credit limit at the time of billing.

  *  Secured credit line loans: A minimum scheduled payment is due each billing cycle, whether or not the loan was paid ahead or the balance increased during the cycle. The minimum payment shall be $25.00 or 1.5% of the outstanding balance, whichever is greater, plus any amount in excess of the authorized credit limit at the time of billing.

* **Prepayments:** Credit line loans may be paid in full or prepaid in any amount at any time.

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**RENTAL AGREEMENT**
Seller Occupancy After Closing

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**Notice**: There are many risks associated with giving a seller the right to occupy a property as a tenant after closing. If a seller fails to vacate the property upon the termination of this rental agreement, a buyer may have limited rights to remove the seller from the property. A buyer should consult with an attorney before entering into an agreement that provides a seller with occupancy after closing.

Date: __4/25/2022__    1

Tenant(s) __Jacarae L Fairbanks__    2
Seller/Tenant           Seller/Tenant

agree(s) to rent from Landlord __Zillehuma Shakir__    3
Buyer/Landlord           Buyer/Landlord

the property commonly known as __18610__   __85th Ave E__    __Puyallup__    4
Address           City

__WA__   __98375__    __Pierce__    (the "Property") on the following terms and conditions:    5
State    Zip      County

1. **RENT.** The rent shall be $ __5.00__ per __Through June 30, 2022__ .    6

   Rent shall be payable to __Zillehuma Shakir__    7

   at _____ .    8

   Other: _____ .    9

2. **POSSESSION.** Tenant is entitled to possession on the closing of the sale of the Property from Tenant (Seller) to   10
   Landlord (Buyer). If the sale does not close, then this Agreement is void.   11

3. **TERM.** This Agreement shall terminate on __6/30/2022__ ("Termination Date"). Upon termination, any   12
   advance rent shall be pro-rated on a daily basis, and the unused portion refunded to Tenant immediately upon   13
   Tenant's vacating the Property. If Tenant holds over without the written consent of Landlord, Tenant shall be liable for   14
   rent and all other damages sustained by Landlord because of such holdover to the extent permitted by applicable laws.   15

   Tenant hereby acknowledges and agrees that pursuant to this Paragraph 3, Landlord has provided to Tenant the   16
   requisite advance written notice that: (i) the tenancy granted hereunder shall automatically expire and/or terminate   17
   upon the Termination Date without further notice to Tenant, (ii) Tenant is not entitled to any rights to extend the   18
   Termination Date or to continue to occupy or use the Property beyond the Termination Date, (iii) Tenant must   19
   immediately vacate and surrender the Property to Landlord on the Termination Date as further provided in this   20
   Agreement, and (iv) this notice to Tenant shall constitute personal delivery to Tenant consistent with RCW 59.12.040.   21

4. **INSURANCE.** Landlord agrees to insure the Property against fire and other normal casualties. All proceeds of any   22
   such policy shall be payable to Landlord alone. Landlord shall have no responsibility for insuring anything in or on   23
   the Property which belongs to Tenant. Tenant is advised that renter's insurance is available to Tenant for   24
   coverage related to liability for bodily injury, property damage, and for the theft, loss, or damage to Tenant's   25
   personal property.   26

5. **UTILITIES.** Tenant agrees to pay for all utilities, including garbage collection charges, during the term of the   27
   Agreement.   28

6. **IMPROVEMENTS.** Tenant shall not be entitled to make any improvements or alterations to the Property, including   29
   painting, during the term of this Agreement, without the written permission of Landlord. Tenant will return the   30
   Property to Landlord in as good a condition as it presently is, ordinary wear and tear excepted.   31

7. **SUBLETTING OR ASSIGNMENT.** Tenant may not sublet the Property and may not assign Tenant's rights under   32
   this Agreement.   33

8. **CITY OF SEATTLE RENTAL REGULATION ORDINANCE.** If the Property is located within the City of Seattle,   34
   then a copy of a summary of city and state landlord/tenant laws is attached. Tenant hereby acknowledges receipt   35
   of a copy of the summary.   36

9. **RELEASE OF REAL ESTATE FIRMS.** Landlord and Tenant release all real estate firms and brokers involved   37
   with this Agreement between Landlord and Tenant and agree to indemnify all real estate firms and brokers from   38
   any and all claims arising under this Agreement.   39

| Landlord's Initials | Date | Landlord's Initials | Date | Tenant's Initials | Date | Tenant's Initials | Date |
|---|---|---|---|---|---|---|---|

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

Form 65B
Rental – Delayed Occupancy
Rev. 8/21
Page 2 of 2

**RENTAL AGREEMENT**
Seller Occupancy After Closing
*(Continued)*

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**10. ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and is  40
successful, the other party agrees to pay reasonable attorneys' fees. In the event of a trial, the amount of fees  41
shall be as fixed by the Court.  42

**11. SMOKE DETECTOR.** Tenant acknowledges and Landlord certifies that the Property is equipped with a smoke  43
detector(s) as required by RCW 43.44.110 and that the detector(s) has/have been tested and is/are operable. It is  44
Tenant's responsibility to maintain the smoke detector(s) as specified by the manufacturer, including replacement  45
of batteries, if required. In addition, if the Property is a multi-family building (more than one unit), Landlord makes  46
the following disclosures:  47

   (a) The smoke detection device is ☐ hard-wired ☒ battery operated.  48

   (b) The Building ☐ does ☒ does not have a fire sprinkler system.  49

   (c) The Building ☐ does ☒ does not have a fire alarm system.  50

   (d) ☒ The building has a smoking policy, as follows:  51

      no smoking  52

     ☐ The building does not have a smoking policy.  53

   (e) ☐ The building has an emergency notification plan for occupants, a copy of which is attached to this  54
     Agreement.  55

     ☒ The building does not have an emergency notification plan for occupants.  56

   (f) ☐ The building has an emergency relocation plan for occupants, a copy of which is attached to this  57
     Agreement.  58

     ☒ The building does not have an emergency relocation plan for occupants.  59

   (g) ☐ The building has an emergency evacuation plan for occupants, a copy of which is attached to this  60
     Agreement.  61

     ☐ The building does not have an emergency evacuation plan for occupants.  62

   Tenant hereby acknowledges receipt of a copy of the building's emergency evacuation routes.  63

**12. CARBON MONOXIDE ALARMS.** Landlord shall equip the Property with carbon monoxide alarm(s) in accordance  64
with the state building code as required by RCW 19.27.530. The parties acknowledge that the real estate firms  65
and brokers are not responsible for ensuring that Landlord complies with RCW 19.27.530.  66

**13. LEAD-BASED PAINT.** If the Property includes housing that was built before 1978, then the Addendum entitled  67
"Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards" (NWMLS Form 22J Lease or  68
equivalent), must be attached to this Agreement unless this lease/rental transaction is exempt from all applicable  69
federal regulations.  70

**14. MOLD DISCLOSURE.** Tenant acknowledges receipt of the pamphlet entitled "A Brief Guide to Mold, Moisture,  71
and Your Home."  72

**15. OTHER.**  73

  74
  75
  76
  77
  78
  79
  80
  81

*Zillehuma Shakir*

| _____ | _____ | | _____ | _____ |
|---|---|---|---|---|
| Landlord | Date | | Tenant | Date |

*Jacarae L Fairbanks*

| _____ | _____ | | _____ | _____ |
|---|---|---|---|---|
| Landlord | Date | | Tenant | Date |

Authentisign ID: 42C280CD-6BC6-EC11-997E-501AC586CB79

**EXHIBIT - A**
**LEGAL DESCRIPTION**

LOT 31 OF COUNTRY ROSE, AS PER PLAT RECORDED SEPTEMBER 11, 2002 UNDER RECORDING NO. 200209115012, RECORDS OF PIERCE COUNTY AUDITOR;

SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.



3/30/22

# EXHIBIT B

Case 20-42304-MJH    Doc 110-2    Filed 05/06/22    Ent. 05/06/22 12:33:35    Pg. 31 of 33

File No./Escrow No.: 22-336082
Officer/Escrow Officer: Maschel Halverson

**WFG National Title Company of Washington, LLC**
**2102 N Pearl Street**
**Suite 105**
**Tacoma, WA 98406**

| | |
|---|---|
| Property Address: | 18610 85TH AVENUE E<br>PUYALLUP, WA 98375 (PIERCE)<br>(6024040310) |
| Buyer: | ZILLEHUMA SHAKIR<br>24303 184th Ave SE<br>Kent, WA 98042 |
| Seller: | FOR THE BANKRUPTCY ESTATE OF JACARAE L FAIRBANKS, BANKRUPTCY CASE #20-42304<br>18610 85th Avenue E<br>Puyallup, WA 98375 |
| Lender: | Lender to Follow |
| Settlement Date: | |
| Disbursement Date: | 5/26/2022 |

| Seller Debit | Seller Credit | Description | Buyer Debit | Buyer Credit |
|---|---|---|---|---|
| | | **Deposits, Credits, Debits** | | |
| | $485,000.00 | Sale Price of Property | $485,000.00 | |
| | | Deposit | | $10,000.00 |
| | $188.00 | Filing Fee for Chapter 13 Motion to Sell | $188.00 | |
| | | **Prorations** | | |
| | $120.55 | HOA Dues (Paid) 5/26/2022 to 1/1/2023 @ $200.00/Year | $120.55 | |
| | $568.88 | County Taxes 5/26/2022 to 7/1/2022 @ $2,860.18/Six Months | $568.88 | |
| | | **Payoffs** | | |
| $356,012.45 | | Payoff of First Mortgage Loan to | | |
| | | Principal: $254,945.64 | | |
| | | Interest, 4/29/2022 to 6/2/2022 @$24.45/day: $831.30 | | |
| | | Suspense Balance: ($462.80) | | |
| | | Estimated Payoff Charges: $383.50 | | |
| | | Late Fee: $654.68 | | |
| | | Unpaid Principal Due: $25,441.18 | | |
| | | Unpaid Loan Charges or Advances: $34,125.48 | | |
| | | Additional Interest: $40,093.47 | | |
| | | **Commissions** | | |
| $16,975.00 | | Real Estate Commission 3.50 % to Keller Williams Realty | | |
| $12,125.00 | | Real Estate Commission 2.50 % to REAL Brokerage LLC | | |
| | | **Title Charges** | | |
| $1,205.00 | | Title - Owner's Title Insurance to WFG National Title Company of Washington, LLC | | |
| | | Title - ALTA 22 Location (06-17-06) L - NC Endorsement(s) to WFG National Title Company of Washington, LLC | $0.00 | |
| | | Title - ALTA 8.1 Environmental Protection Lien (6-17-06) - No Charge Endorsement(s) to WFG National Title Company of Washington, LLC | $0.00 | |
| | | Title - ALTA 9.10 Restrictions, Encroachments, Minerals, Current Violations Loan Policy  Endorsement(s) to WFG National Title Company of Washington, LLC | $0.00 | |
| $35.00 | | Title - Release Tracking Fee to WFG National Title Company of Washington, LLC | | |
| $1,000.00 | | Title - Settlement or Closing Fee to WFG National Title Company of Washington, LLC | $1,000.00 | |
| | | Title - Remote Notary Signing Fee Buyer/Borrower to WFG National Title Company of Washington, LLC | $50.00 | |
| $50.00 | | Title - Remote Notary Signing Fee Seller to WFG National Title Company of Washington, LLC | | |
| $3.61 | | Title - Sales Tax on Release Fee to WFG National Title Company of Washington, LLC | | |
| | | Title - Sales Tax - Remote Notary Signing Fee Buyer/Borrower to WFG National Title Company of Washington, LLC | $5.15 | |
| $5.15 | | Title - Sales Tax - Remote Notary Signing Fee Seller to WFG National Title Company of Washington, LLC | | |
| $124.12 | | Title - Sales Tax on Owner's Title Insurance to WFG National Title Company of Washington, LLC | | |

File # 22-336082
Printed on 5/5/2022 at 1:26 PM

Case 20-42304-MJH    Doc 110-2    Filed 05/06/22    Ent. 05/06/22 12:33:35    Pg. 32 of 33

| Seller Debit | Seller Credit | Description | Buyer Debit | Buyer Credit |
|---|---|---|---|---|
| $103.00 | | Title - Sales Tax on Settlement Fee Charges to WFG National Title Company of Washington, LLC | $103.00 | |
| | | **Government Recording and Transfer Charges** | | |
| $210.50 | | Recording Fee, Lien Release to WFG National Title Company of Washington, LLC    $210.50 | | |
| $7,765.00 | | Excise Tax Affidavit to Pierce County Assessor-Treasurer | | |
| | | Recording fees: Deed $206.50 | $206.50 | |
| | | Mortgage $230.50 | $230.50 | |
| | | **Additional Settlement Charges** | | |
| $2,917.39 | | Property Tax Due (Seller) to Pierce County Assessor-Treasurer | | |
| $1,867.43 | | Payoff: Sewer to Pierce County Sewer | | |
| $639.08 | | Payoff: Water to Rainier View Water Co | | |
| $2,848.76 | | Payoff: Electricity to Tacoma Public Utilities | | |
| $3,148.00 | | HOA Dues to Country Rose HOA | | |

| Seller | | | Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| $407,034.49 | $485,877.43 | **Subtotals** | $487,472.58 | $10,000.00 |
| | | Due From Buyer | | $477,472.58 |
| $78,842.94 | | Due To Seller | | |
| $485,877.43 | $485,877.43 | **Totals** | $487,472.58 | $487,472.58 |

---

### Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize WFG National Title Company of Washington, LLC to cause the funds to be disbursed in accordance with this statement.

**BUYER(S)**

_____
ZILLEHUMA SHAKIR

**SELLER(S)**

By:_____Date:_____
Jacarae L Fairbanks

**SETTLEMENT COORDINATOR**

_____
Maschel Halverson

File # 22-336082
Printed on 5/5/2022 at 1:26 PM